**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CERTAINTEED CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KNAUF INSULATION, SPRL,<br><br>Defendant. | Civil Action No. 11-623 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

In this case, plaintiff Certainteed Corporation seeks declaratory judgment that it is not infringing a patent allegedly owned by defendant Knauf Insulation, SPRL ("Knauf-BE"). The defendant has moved to dismiss the Complaint on grounds that the Court lacks subject matter jurisdiction because the defendant does not own the patent at issue.[1] As explained below, the Court agrees that it lacks subject matter jurisdiction because the defendant is not the owner of the patent. The plaintiff's Complaint is therefore dismissed.

## I. BACKGROUND

### A. Patent Application and Assignment

On January 25, 2007, three employees of Knauf Insulation Limited, a United Kingdom company, ("Knauf-UK") filed a patent application with the United States Patent and Trademark Office ("USPTO") seeking to patent a certain type of formaldehyde-free mineral fibre insulation product ("the '980 patent"). Compl., Ex. A, at 1. Before the USPTO issued the patent, on October 1, 2009, Knauf-UK entered into an agreement assigning the '980 patent application to

[1] The defendant contends that the plaintiff has only filed the instant case as a "tactical forum-shopping ploy" to avoid a patent infringement action brought by the real patent owner in the U.S. District Court for the Southern District of Indiana. Whatever motivation the plaintiff had for filing the instant suit in this Court after suit had already been initiated against it in another jurisdiction is irrelevant to the Court's determination that it lacks subject matter jurisdiction.

Knauf-BE, a Belgian corporation and one of Knauf-UK's sister companies. Pl.'s Opp'n Mot. Dismiss, ECF No. 15, Decl. Barry J. Herman, Ex. 2.

A few weeks following Knauf-UK's assignment of the '980 patent application to Knauf-BE, between October 14 and 29, 2009, the three Knauf-UK employees who initiated the patent application assigned their rights in the '980 patent application to their employer, Knauf-UK. Pl.'s Opp'n Mot. Dismiss, ECF No. 15, Decl. Barry J. Herman, Ex. 3. Knauf-UK then recorded the assignment executed by its employees with the USPTO. *Id*. Accordingly, despite the earlier transfer of interest in the '980 patent application from Knauf-UK to Knauf-BE, on December 21, 2010, the USPTO issued the '980 patent and named Knauf-UK the patent's sole assignee. Compl., Ex. A.

**B. Litigation Involving the '980 Patent**

Approximately two months after being issued the '980 patent, on February 28, 2011, Knauf-UK filed a case against plaintiff Certainteed Corporation in the U.S. District Court for the Southern District of Indiana alleging that the plaintiff was infringing the '980 patent. *See Knauf Insulation Ltd. v. Certainteed Corp.*, No. 11-300 (S.D. Ind. filed Feb. 28, 2011). After the filing of that case, the plaintiff and Knauf-UK allegedly entered into settlement negotiations, and Knauf-UK therefore delayed service of the Complaint while these discussions proceeded. Def.'s Mot. Dismiss, ECF No. 13, Decl. Felicia Boyd ("Boyd Decl."), ¶¶ 2-3.

In the midst of settlement negotiations, on March 25, 2011, Certainteed filed a Complaint against defendant Knauf-BE in this Court, asserting that the defendant was the true owner of the '980 patent and seeking declaratory judgment that it did not infringe the '980 patent. Compl. ¶¶ 8-11. The plaintiff also moved to dismiss the case in the Southern District of Indiana on grounds that Knauf-UK was not the owner of the '980 patent. *See* Certainteed's Mot. Dismiss, *Knauf*

*Insulation Ltd. v. Certainteed Corp.*, No. 11-300 (S.D. Ind. Apr. 14, 2011), ECF No. 19. Specifically, the plaintiff argued that under United Kingdom law, Knauf-UK was automatically entitled to any patent rights filed by its employees, and thus the assignment of the '980 patent from Knauf-UK to the defendant on October 1, 2009 was valid, and there is no significance to the employees' later assignment of their patent rights to Knauf-UK. *Id*.

In response to the plaintiff's filings in this Court and in the Southern District of Indiana, Knauf-BE sent Certainteed a letter disclaiming ownership of the '980 patent and any intention to take action against the plaintiff for infringement on the '980 patent. Boyd Decl., Ex. 1. Shortly thereafter, on April 20, 2011, the defendant executed a "Quitclaim and Assignment," which stated:

> . . . for avoidance of doubt, KI-BE desires to quitclaim and release to KI-UK all residual and/or equitable rights KI-BE may have nevertheless maintained in the US Application and '980 patent by virtue of KI-UK's previous assignment of KI-UK's rights in the PCT application to KI-BE.

Boyd Decl., Ex. 2. The quitclaim, however, contained a typographical error. Instead of assigning the patent's rights from Knauf-BE to Knauf-UK, the quitclaim stated: "*KI-BE* hereby releases and quitclaims and assigns *to KI-BE* any right, title, interest, claim, or demand whatsoever that KI-BE may have acquired and/or retained in the US Application and the '980 patent." (emphasis added). *Id.*

Following the April 20, 2011 quitclaim and assignment, Certainteed continued to maintain that the case in the Southern District of Indiana should be dismissed. *See* Certainteed's Reply, *Knauf Insulation Ltd. v. Certainteed Corp.,* No. 11-300 (S.D. Ind. May 12, 2011), ECF No. 33. It argued that in a patent infringement action the party seeking to enforce its rights is required to have those rights at the time the lawsuit is filed. *Id.* at 6 (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003)). Thus, if it was effective at all, the

plaintiff argued that the April 20, 2011 quitclaim and assignment was executed too late to allow for Knauf-UK to have standing to sue for infringement. In an attempt to obviate this argument, Knauf-UK voluntarily dismissed its Complaint in the Southern District of Indiana and filed a new case,[2] on May 19, 2011, again asserting infringement of the '980 patent against the plaintiff.[3] *See Knauf Insulation Ltd. v. Certainteed Corp.*, No. 11-680 (S.D. Ind. filed May 19, 2011).

As a consequence of this procedural history, two actions are currently pending regarding the plaintiff's alleged infringement of the '980 patent: the plaintiff's declaratory judgment action against the defendant in this Court, and Knauf-UK's action against the plaintiff in the Southern District of Indiana.

**C. Motions Seeking Dismissal of the Pending Actions**

In June 2011, the defendant moved to dismiss the case proceeding in this Court and the plaintiff moved to dismiss the proceedings in the Southern District of Indiana. At issue in these motions is the dispute over the ownership of the '980 patent.

Specifically, on June 10, 2011, the defendant moved to dismiss the Complaint in this Court for lack of subject matter jurisdiction, arguing that the '980 patent was owned by Knauf-UK, not by the defendant, and thus there is no "actual and justiciable controversy" for the Court to resolve. Mem. Supp. Def.'s Mot. Dismiss, ECF No. 13 ("Def.'s Mem."), at 2. On June 16, 2011, the plaintiff here moved to dismiss the action pending against it in the Southern District of Indiana on grounds that the April 20, 2011 quitclaim and assignment was not effective because

---

[2] This case was initiated by both Knauf-UK, as well as its German affiliate, Knauf Insulation GMBH ("Knauf-Germany"). Knauf-Germany received an exclusive license to use the '980 patent from Knauf-UK and was allegedly added as a plaintiff in order to "assure[] Certainteed that all who could claim through the patent were [] parties to the litigation in the Southern District of Indiana." *Knauf Insulation Ltd. v. Certainteed Corp.*, No. 11-680, slip-op, at 3 (S.D. Ind. Mar. 1, 2012).

[3] Knauf-UK voluntarily dismissed the original case against the plaintiff on May 26, 2011, one week after it filed its second Complaint in the Southern District of Indiana against the plaintiff.

of the drafting error and therefore Knauf-UK did not have standing to sue for infringement because the defendant here, Knauf-BE, still owned the '980 patent. Plaintiff's Notice, ECF No. 17, Ex. 1, Certainteed's Mot. Dismiss in Southern District of Indiana. Although Knauf-UK maintained that the April 20, 2011 quitclaim was effective despite the drafting error, on June 24, 2011, Knauf-UK and Knauf-BE responded to the plaintiff's motion in Indiana by executing a "Quitclaim and Assignment Confirmation" to confirm that the '980 patent was assigned from the defendant to Knauf-UK. Def.'s Reply, ECF No. 16, Ex. 3.

On March 1, 2012, the Southern District of Indiana denied the plaintiff's motion to dismiss the infringement action filed by Knauf-UK, holding that Knauf-UK owned the '980 patent because "it is beyond dispute that [Knauf-BE] intended to quitclaim and/or transfer any remaining rights in the 980 patent to [Knauf-UK] through the Quitclaim and Assignment executed on April 20, 2011." *See Knauf Insulation Ltd. v. Certainteed Corp.*, No. 11-680, slip-op, at 5 (S.D. Ind. Mar. 1, 2012). The court further rejected the plaintiff's argument that its action in the District of Columbia was the proper forum to adjudicate infringement claims regarding the '980 patent because it was the "first-filed" case. *Id.* at 6-7. The court stated that "regardless of which Knauf entity owned the 980 patent rights at the time the declaratory judgment action was filed, it is clear that KI-Limited owned them when [the Complaint in the Southern District of Indiana] was filed." *Id*. at 8. Accordingly, Knauf-UK's claims that the plaintiff infringed the '980 patent are proceeding in the Southern District of Indiana.

Currently pending before this Court is the defendant's motion to dismiss. As explained below, the Southern District of Indiana concluded that Knauf-UK owns the '980 patent and the plaintiff is therefore precluded by the doctrine of collateral estoppel from re-litigating that issue here. Given that the defendant does not own the patent at issue, and that litigation involving the

real owner of the patent is proceeding in the Southern District of Indiana, there is no "case or controversy" involving the plaintiff and the defendant before this Court. Consequently, the defendant's motion to dismiss is granted.

## II. STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Mostofi v. Napolitano*, No. 11-cv-727, 2012 U.S. Dist. LEXIS 9563, at *4 (D.D.C. Jan. 27, 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Ki Sun Kim v. United States*, No. 08-cv-1660, 2012 U.S. Dist. LEXIS 2094, at *8 (D.D.C. Jan. 9, 2012). As the Supreme Court has explained "many times," the "district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)) (internal citations omitted); *see also Micei Int'l v. DOC*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court. . . . The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it.") (internal citations and quotation marks omitted). For this reason, a "federal district court's initial obligation is to ascertain its subject matter jurisdiction." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 45 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 U.S.App. LEXIS 13869 (D.C. Cir. July 6, 2010). When a court lacks subject matter jurisdiction, it must dismiss the case. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003); *Westberg v. FDIC,* 759 F. Supp. 2d 38, 41 n.1 (D.D.C. 2011); *Dubois v. Wash. Mut. Bank*, No. 09-cv-2176, 2010 WL 3463368, at * 2 (D.D.C. Sept. 3, 2010); *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 135 (D.D.C. 2009). In this respect, it is "the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence." *Sai v. Clinton*, 778 F. Supp. 2d 1, 5 (D.D.C. 2011) (quoting *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000)). In deciding whether to grant a motion to dismiss for lack of jurisdiction, "the district court may consider materials outside the pleadings" but "must still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) and *United States v. Gaubert*, 499 U .S. 315, 327 (1991)); *see also Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (noting that courts may consider materials outside the pleadings in ruling on a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction); *Citizens for Responsibility & Ethics in Wash. v. FEC*, No. 11-cv-951, 2011 U.S. Dist. LEXIS 149672, at *6 (D.D.C. Dec. 30, 2011). The court, however, "need not accept as true a legal conclusion couched as a factual allegation, nor inferences that are unsupported by the facts set out in the complaint." *Mostofi*, No. 11-cv-0727, 2012 U.S. Dist. LEXIS 9563, at * 5 (citations and quotation marks omitted).

## III. DISCUSSION

Despite being sued for patent infringement by Knauf-UK in the Southern District of Indiana, the plaintiff initiated this case seeking declaratory judgment against the defendant based on its assertion that the defendant was the true owner of the '980 patent. The defendant contends, however, that it does not own the '980 patent, and the Court lacks subject matter jurisdiction to enter declaratory judgment because there is no "actual controversy" between the parties. The Court agrees.

### A. The Declaratory Judgment Act

Pursuant to the Declaratory Judgment Act, the Court has subject matter jurisdiction to enter declaratory judgment only when there exists an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Without an "actual controversy" between the parties, the Court lacks jurisdiction to provide declaratory relief. *MedImmune v. Genentech*, 549 U.S. 118, 127 (2007). For an actual controversy to exist, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and . . . real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (internal quotations and alterations omitted). The facts must show "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

The threat of litigation is not required to establish a controversy, so long as the parties have taken adverse positions with regard to their legal rights and obligations. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937) (holding that when an insurer and insured take adverse positions with regard to their obligations under their insurance contract, an Article III

controversy exists). In the patent context, a justiciable controversy may exist where a patentee directly or indirectly charges a company with infringement. *See Volkswagen of Am. v. Engelhard Minerals & Chemicals Corp.*, 401 F. Supp. 1210, 1213-14 (S.D.N.Y 1975); *Positec USA v. Milwaukee Elec. Tool Corp.*, No. 05-890, 2006 U.S. Dist. LEXIS 68730 (D. Del. Sept. 25, 2006).

### B. The Plaintiff is Collaterally Estopped from Disputing the Ownership of the ‘980 Patent

The defendant contends that there is no justiciable controversy between the parties because the defendant does not own the ‘980 patent and has never intended to sue, directly or indirectly, the plaintiff for infringement. While the parties contest ownership of the ‘980 patent before this Court, the Southern District of Indiana has already rejected the plaintiff’s argument that the April 20, 2011 quitclaim and assignment between the defendant and Knauf-UK was ineffective, holding that Knauf-UK, and not the defendant, is the owner of the ‘980 patent. Given the Southern District of Indiana’s ruling, the doctrine of collateral estoppel precludes the plaintiff from disputing that issue before this Court.

Collateral estoppel, also known as issue preclusion, prevents a party from re-litigating an issue that has been conclusively resolved by another court. The doctrine is intended to create “judicial finality; it fulfills ‘the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.’” *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)).

For collateral estoppel to apply, three conditions must be satisfied. First, “the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case.” *Id*. Second, “the issue must have been actually and necessarily

determined by a court of competent jurisdiction in that prior case." *Id.* Third, "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Id.* All three conditions are fulfilled here.

The first element of collateral estoppel is clearly met in this case. Before the Southern District of Indiana, Certainteed argued that Knauf-UK's patent infringement lawsuit should be dismissed because the defendant was the owner of the '980 patent. Specifically, it argued that the only valid transfer of the '980 patent was on October 1, 2009, when Knauf-UK transferred rights in the patent to the defendant. The plaintiff further argued that the quitclaim and assignment executed on April 20, 2011 was not effective because the defendant conveyed rights "to itself." The plaintiff's arguments regarding the ownership of the '980 in that case are identical to ones it asserts before this Court.

The second element of collateral estoppel is also satisfied. On March 1, 2012, the Southern District of Indiana denied the plaintiff's motion to dismiss, holding that Knauf-UK, not the defendant, was the owner of the '980 patent. The Southern District of Indiana found that the April 20, 2011 quitclaim and assignment was effective even though there was a typographical error in the document. Knauf-UK therefore had all rights to the '980 patent and "had the required standing" to assert claims of infringement against the plaintiff in the Southern District of Indiana. Given that the plaintiff's motion to dismiss before the Southern District of Indiana was premised on the argument that the defendant was the owner of the '980 patent, the court's resolution of that issue "actually and necessarily" determined ownership of the '980 patent.

Finally, estopping the plaintiff from claiming that the defendant owns the '980 patent would not be unfair. The plaintiff itself urged the Southern District of Indiana to determine the ownership of the '980 patent when it filed its motion to dismiss on grounds that Knauf-UK did

not have rights to the patent. The plaintiff had full opportunity and incentive to litigate that issue before that Court, and certainly did so.

Given that the conditions of collateral estoppel are fulfilled, the plaintiff is estopped from asserting that the defendant is the owner of the '980 patent and this Court will not disturb the Southern District of Indiana's conclusion that Knauf-UK has been the owner of the '980 patent since, at least, April 20, 2011. In light of the fact that the defendant is not the owner of the patent, and therefore cannot maintain a patent infringement action against the plaintiff, there is no actual controversy involving the parties before the Court. *See King Pharms. v. Eon Labs.*, 616 F.3d 1267, 1282-83 (Fed. Cir. 2010) (stating that where a party retains no rights to sue and covenants not to sue, there exists no case or controversy). Consequently, the defendant is correct that this Court lacks subject matter jurisdiction to enter declaratory judgment. *See United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011) ("It is a basic principle of Article III that a justiciable case or controversy must remain "extant at all stages of review, not merely at the time the complaint is filed."); *Chamber of Commerce v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) (same).

**C. The Court Will Not Entertain The Plaintiff's Claim for Declaratory Relief**

The plaintiff contends that "even if Knauf-BE had properly assigned all substantial rights to the '980 patent via its Quitclaim and Assignment, that assignment does not divest this Court of jurisdiction over this dispute." Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Mem."), ECF No. 15, at 12. Specifically, the plaintiff argues that the defendant owned the patent at the time this case was filed, and the defendant's "purported assignment to Knauf-UK does not eliminate the actual controversy with [the plaintiff] regarding the '980 patent" because "Knauf-UK can be substituted or joined as a successor in interest" pursuant to FED. R. CIV. P. 25(c).[4] Pl.'s Mem., at 13. Even

[4] FED. R. CIV. P. 25(c) provides that where an interest is transferred, "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the

assuming, *arguendo*, that the plaintiff is correct, the Court exercises its discretion to abstain from entertaining the plaintiff's claim for declaratory relief.

Even when the Court has subject matter jurisdiction over claims in the Complaint, the Court still has broad discretion to abstain from entertaining an action for declaratory judgment. *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 25 (D.D.C. 2011) ("District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites," quoting *Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995)); *see also MedImmune v. Genentech*, 549 U.S. 118, 136 (2007). The Declaratory Judgment Act expressly provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," making clear the permissive nature of declaratory judgment jurisdiction. 28 U.S.C. § 2201(a) (emphasis added). A court may properly refuse to hear a declaratory judgment action in view of "considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. "In deciding whether to exercise its permissive jurisdiction over declaratory actions, a court may consider 'equitable, prudential, and policy arguments.'" *Swish Mktg. v. FTC*, 669 F. Supp. 2d 72, 76 (D.D.C. 2009) (quoting *MedImmune*, 549 U.S. at 136). While there is no list of dispositive factors for determining when the Court should exercise its discretion to hear a

original party." The decision to substitute or join a party under Rule 25(c), however, falls within the sound discretion of the district court. *Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 482 (D.C. Cir. 1996). In this case, although the plaintiff contends that subject matter jurisdiction exists over its claims despite assignment of the patent, the defendant has never asserted claims against the plaintiff and retains no right to do so. Accordingly, regardless of whether the Court permitted substitution of Knauf-UK as a defendant in this case pursuant to FED. R. CIV. P. 25(c), Knauf-BE must be dismissed from this action. *See Biovail Laboratories v. Torpharm*, No. 01-C-9008, 2002 WL 31687610, at *1-3 (N.D. Ill. 2002) (dismissing prior owner of patents from suit because it no longer had any interest in suit once it assigned patents); *EMS-American Grilon v. DSM Resins, U.S.*, No. 89-2190, 1989 WL 230919, at *1 (D.N.J. 1989) (dismissing prior owner of patent from suit because once it assigned patent there was no case or controversy that could be said to exist between the parties). To the extent that the plaintiff seeks to adjudicate its rights vis-à-vis Knauf-UK, it may do so in the Southern District of Indiana.

declaratory judgment action, "the D.C. Circuit has listed several relevant considerations to guide the Court's analysis." *Id.* Those factors include:

> Whether a declaratory judgment would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing"; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.

*Id.* at 76-77 (quoting *Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976)).

Here, even if the Court did have subject matter jurisdiction, there is no reason for the Court to waste judicial resources and entertain the plaintiff's declaratory judgment action. *See Serco v. Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (stating that "even if a case satisfies the actual controversy requirement, there is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances."). As discussed above, the defendant does not own the '980 patent and therefore cannot assert infringement claims against the plaintiff. The true owner of the '980 patent, Knauf-UK, has asserted infringement claims against the plaintiff in the Southern District of Indiana, and that case has been proceeding since February 28, 2011. There is little logic for the Court to consider declaratory judgment here when the owner of the '980 patent is not a party in this case and an action against the plaintiff for direct infringement is proceeding in another Court. *See id.* (in deciding whether to entertain an action for declaratory judgment, "[t]he court must make a reasoned judgment whether the investment of time and resources will be worthwhile.").

## IV. CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is GRANTED. An appropriate Order shall accompany this Memorandum Opinion.

**DATED: MARCH 29, 2012**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge